[Doc. No. 92]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANNE KAVANAGH,<br><br>       Plaintiff,<br><br> v.<br><br>REFAC OPTICAL GROUP, et al.,<br><br>       Defendants. | Civil No. 15-4886 (JHR/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendants' "Motion for Spoliation Sanctions" [Doc. No. 92].[1] The Court received plaintiff's opposition [Doc. Nos. 94, 95], defendants' reply [Doc. No. 97], and the parties' supplemental submissions [Doc. Nos. 114, 115]. The Court also held oral argument as well as a separate evidentiary hearing. For the reasons to be discussed, defendants' motion is denied.

Background

The parties are familiar with the background of the case so only a brief summary will be provided. Plaintiff filed her complaint on June 30, 2015. Plaintiff alleges she was recruited to leave her consulting business to work for defendants. Complaint ¶18. Plaintiff alleges defendants Refac Optical and

---
[1] The defendants are Refac Optical Group and U.S. Vision, Inc.

1

U.S. Vision acted as a single integrated enterprise. Id. ¶12. Plaintiff claims defendants agreed to pay her a "Wall Street" fee (industry rate) for financing she secured on U.S. Vision's behalf through Zeiss International and/or Contour Optik, Inc., in addition to other benefits. Id. ¶¶23-26. Plaintiff accepted defendants' employment offer on or about August 15, 2010. Id. ¶27. On June 9, 2014, plaintiff's employment was terminated but she was offered a severance package that she accepted. The crux of plaintiff's claim is that defendants breached their agreements. Plaintiff claims defendants not only breached the severance agreement, but also the agreement to pay her fees for the Zeiss and Contour deals. Id. ¶¶52-53. Plaintiff claims defendants did not pay her "no less than $1 million in compensation" from deals plaintiff arranged with Zeiss and Contour. Id. ¶¶37-41. Defendants deny all liability allegations.

William Schwartz acted as the CEO of U.S. Vision during a significant part of plaintiff's employment, including at the time of her hiring. Id. ¶15. The instant motion arises out of meetings plaintiff and her former live-in partner, Yvette Milavec, had with Schwartz after plaintiff was terminated. The parties do not dispute that plaintiff and Milavec secretly recorded conversations plaintiff had with Schwartz. The recordings started soon after plaintiff received a September 10, 2014 letter from Refac's attorneys, Hogan-Lovells, stating,

2

inter alia, that Schwartz denied that he agreed to pay plaintiff a "finder's fee." The essence of defendants' claim is that plaintiff and/or Milavec spoliated evidence by destroying some of the recordings of conversations plaintiff had with Schwartz.[2]

There is no direct eyewitness evidence confirming plaintiff or Milavec destroyed, lost or edited recordings. They both deny this occurred. In view of these denials defendants ask the Court to infer spoliation occurred from circumstantial evidence. Defendants argue their most persuasive evidence is a notation in Milavec's notebook in her handwriting where she wrote "shit can tape recording on my ph[one]." Defendants argue, "[t]his statement can only be interpreted one way: delete recordings of conversations with Mr. Schwartz, Mr. Bernstein and/or other." Defendants' Memo. at 10. Second, defendants argue spoliation can be inferred because of "the careless manner in which Plaintiff and Ms. Milavec stored [the] relevant evidence (despite their obligation to preserve it, ….)" Id. at 10-11. Third, defendants argue spoliation can be inferred because of "Ms. Milavec's

---

[2] On December 23, 2015, plaintiff produced three audio recordings between her and Schwartz. On October 21, 2016, plaintiff produced fourteen additional audio files. On January 17, 2017, plaintiff produced eight additional files of secretly recorded conversations between her and Schwartz, and a conversation between plaintiff and Al Bernstein, President and CEO of a subsidiary of defendants. See Defendants' Memo. of Law in Support of Motion at 1-2, Doc. No. 92-1. Plaintiff describes in detail the circumstances of these productions in her July 6, 2017 Letter Brief. Doc. No. 115 at 2-4.

3

apparent modus operandi." Id. at 11. Defendants claim Milavec destroyed secretly recorded conversations in the past.

Not surprisingly, plaintiff and Milavec deny they destroyed, lost or edited any recordings. Plaintiff supports her argument with her deposition testimony from December 16, 2016 and March 10, 2017, the Declaration of Milavec (Doc. No. 94-2), and Milavec's August 2, 2017 testimony.[3] Insofar as the requested relief is concerned, defendants ask the Court to prohibit plaintiff from introducing into evidence any of plaintiff's "secret recordings" and to provide an adverse inference instruction to the jury.

Discussion[4]

This motion is governed by Fed. R. Civ. P. 37(e) which addresses the failure to preserve electronically stored information and what and when spoliation sanctions may be imposed. The Rule specifically provides as follows:

> (e) <u>Failure to Preserve Electronically Stored Information.</u> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

---

[3] The Court held an evidentiary hearing on August 2, 2017, at which Milavec testified.
[4] For the purpose of the present motion the Court will assume plaintiff had possession, custody or control of Milavec's recordings given their close relationship and the fact they lived together.

4

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

It is self-evident that in order to obtain spoliation sanctions pursuant to Rule 37(e) spoliation must occur. In order to prove that spoliation occurred defendants must prove that ESI was "lost." See Committee Notes (2015) to Fed. R. Civ. P. Rule 37(e); see also Friedman v. Phila. Parking Auth., C.A. No. 14-6071, 2016 U.S. Dist. LEXIS 32009, *19-20 (E.D. Pa. March 10, 2016)(declining to impose spoliation sanctions where moving party had not been able to identify any specific lost information).

As will be discussed in more detail, the Court finds defendants did not prove that any recordings made by plaintiff or Milavec were lost, destroyed or edited. Therefore, since defendants cannot prove spoliation occurred, defendants' motion

for sanctions will be denied.[5] The Court agrees with plaintiffs' argument that defendants' motion is without merit because "there is no spoliation. Defendants cannot articulate any recording that was allegedly lost or destroyed." Plaintiffs' Opposition Memo. of Law at 1, Doc. No. 94.

The Court begins its analysis by acknowledging plaintiff testified at her deposition she did not spoliate any recordings.[6] The Court has not been presented with any persuasive evidence to disbelieve this testimony.

Defendants focus most of their argument on Milavec's "shit can" notation. Defendants argue this statement proves Milavec destroyed recordings. The Court disagrees. The Court had the opportunity to observe Milavec testify in person under oath and be subject to defendants' cross-examination. Given Milavec's testimony and demeanor, and for the purpose of defendants' motion for spoliation sanctions, the Court credits Milavec's testimony that she did not destroy, lose or edit any recorded conversations. Although Milavec admitted she made the "shit can" reference in her notebook, she denied this reflected an intent to destroy or edit Schwartz's recorded conversations. August 2,

---

[5] The parties dispute whether defendants' burden to prove spoliation must be proven by a preponderance of the evidence or clear and convincing evidence. The Court does not have to decide which standard of proof applies because defendants do not satisfy either burden of proof.
[6] See December 16, 2016 Tr. 111:10-16; March 10, 2017 Tr. 21:15-25 to 22:5; 34:21-25 to 35:1-4; 39:9-14.

2017 Tr. 34:3-20. The Court disagrees with defendants' argument that the term "shit can" can only have one meaning. Defendants believe the term necessarily means Milavec destroyed tapes. The Court disagrees. The Court credits Milavec's testimony that her notebook reflects notes she made when she listened to Schwartz's recorded conversations. Id. 23:4-8. Schwartz himself used the "shit can" term when his conversations were recorded. Milavec's shit can reference merely parroted what Schwartz said. Id. 78:3-10.[7] Milavec testified:

> Q. All right. Let's get back to the line on the bottom of page four which says:
>
> "Shit-can tape recording on my phone."
>
> Have I read that correctly?
>
> A. Um-hum.
>
> Q. What did you mean by that?
>
> A. I labeled that as the shit-can recording, like he said it so many times, and it wasn't a term I was ever familiar with, so it stuck out in my mind, and I jotted it down and sort of labeled it as shit-can.

Id. 30:11-20. The fact Milavec included some stray commentary in her notebook in addition to her notes regarding the recordings does not impeach her testimony that the "shit can" reference merely reflected what Schwartz said.

---

[7] Defendants point to some alleged inconsistencies in Milavec's testimony to show she is not credible. Id. 81:20-25 to 84:1. The Court does not find defendants' arguments persuasive given the totality of the record and the opportunity to observe Milavec's demeanor in person.

Defendants argue spoliation can be inferred from the careless manner plaintiff's recordings were stored and produced. However, Milavec testified this was because she did not know more recordings were on her phone. Id. 35:6-11. Further, the fact that plaintiff supplemented her production of audio tapes shows she was aware of her obligation to produce relevant evidence and to supplement a response that was incomplete when first made. See Fed. R. Civ. P. 26(e). In addition, even if plaintiff was not as careful as she could have been, this does not show that any tapes were lost, destroyed or edited. Defendants make much of the fact that plaintiff referred in an email to a tape that was 1.5 hours long that was actually only 61 minutes long. Id. 52:9-25 to 53:3. This is hardly convincing evidence that 30 minutes of tape was destroyed. The discrepancy is just as easily explained by an erroneous estimate of time.

Moreover, the Court credits plaintiff's argument that neither she or Milavec had an incentive to destroy, edit or lose recordings of Schwartz's conversations. The recordings were made at a time when it appears Schwartz was sympathetic to plaintiff. The Court has no reason to believe that at the time the recordings were made Schwartz said anything that would motivate plaintiff or Milavec to spoliate evidence. Milavec testified everything that Schwartz said corroborated what plaintiff said.

Id. 56:2-19. Defendants have not submitted convincing evidence to counter this argument.

The Court is aware that some of plaintiff's tapes are inaudible and that it is possible that some recordings only taped snippets rather than entire conversations. In other words, that the recording device was likely not continuously on but was stopped and started. However, even defendants admit this is not spoliation. June 26, 2017 Tr. 5:3-22; 7:9-23, Doc. No. 119.[8] The fact that plaintiff's recorder may have started and stopped does not, as defendants argue, support a conclusion there were "likely other unhelpful recordings that were deleted." Defendants' Reply Brief at 9, Doc. No. 97. Defendants argue plaintiff "baited" Schwartz into making certain admissions. June 26, 2017 Tr. 20:17-22. Even if true, however, this is not spoliation. If defendants choose to do so the "baiting" argument may be a subject of the trial examinations of plaintiff, Milavec and/or Schwartz. In addition, the Court gives no weight to defendants' argument that spoliation can be inferred because plaintiff testified Schwartz "bashed" defendants' counsel and this reference supposedly does not exist on the produced tapes. The record is far from clear that plaintiff or Milavec testified the alleged "bashing" was recorded. Further, it is possible the

---

[8] The Court held oral argument on June 26, 2017.

"bashing" references were located on inaudible parts of plaintiff's recordings.

Defendants argue that in the past Milavec recorded conversations with people and only used what was helpful. Defendants argue this is evidence of what occurred here. However, Milavec denied this occurred. Id. 63:12:23; 64:7-12. At this time, the Court has no reason to doubt Milavec's denial. Further, even if true, Milavec's past action does not prove she spoliated evidence in this case. The bottom line is that Milavec testified she did not destroy, lose or edit any tape recordings:

> Q. Are you aware of any recordings of Bill Schwartz or anybody related to U.S. Vision or anything related to this case that has in any way been lost or destroyed?
>
> A. No.
>
> Q. Are you aware of any recordings of Bill Schwartz or anyone from U.S. Vision or anything related to this case that have in any way been altered in any way?
>
> A. Nope. No alteration.

Id. 75:3-10. Milavec also has no evidence plaintiff deleted or edited evidence. Id. 77:22-24; 78:20-25. Based on the present record the Court has no reason to doubt plaintiff or Milavec.

Conclusion

For all the foregoing reasons, plaintiff's motion will be denied.

**O R D E R**

Accordingly, it is hereby ORDERED this 14th day of December, 2017, that defendants' Motion for Spoliation Sanctions is DENIED; and it is further

ORDERED that plaintiff's request for sanctions from defendants is DENIED.

                                        s/Joel Schneider
                                        JOEL SCHNEIDER
                                        United States Magistrate Judge

DATED: December 14, 2017